

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEWIS D. PETERSON, | CASE NO. CV 10-306-R |
| Plaintiff, | |
| vs. | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| UNION PACIFIC RAILROAD COMPANY; JASON ZATT; DOES 1 through 20, inclusive, | |
| Defendants. | |

## FINDINGS OF FACT

1. On May 6, 2009, at approximately 10:30 a.m., plaintiff Lewis Peterson was jogging in the City of San Luis Obispo, California, near the intersection of Marsh and Pepper Streets. (Peterson deposition: 18:20-21:12; Declaration of Jason Zatt filed in support of Defendants' Motion for Summary Judgment, ¶ 2.)

2. On May 6, 2009, Defendant Jason Zatt was employed by defendant Union Pacific Railroad as a special agent in its Police Department and working in San Luis Obispo. Zatt was authorized to exercise police powers, including those of detention and arrest, pursuant to

California law. (Plaintiff's Complaint, ¶ 3; Zatt Declaration, ¶ 1, 2.)

3. Peterson was in the midst of a 13 mile run and at that point was approximately 10 miles into the run. (Peterson deposition, 21:13-19.)

4. At the intersection, Peterson encountered a train which blocked his path. (Peterson deposition, 21:22-22:23.)

5. Peterson waited between 10 and 20 seconds for the train to move. When it did not, he climbed aboard a rail car and began to cross a gang way toward the opposite side of the car. This created serious safety concerns for both Plaintiff and others. Zatt witnessed Peterson doing so. (Peterson deposition, Id.; Zatt Declaration, ¶¶ 2, 3.)

6. Peterson halted his route when he saw a Union Pacific Railroad police vehicle on the other side of the rail car. He turned around, got off the car and continued his run. (Peterson deposition, 23:5-24:13, 24:18-25:6; Zatt Declaration, ¶¶ 2, 3.)

7. A short time later, Peterson was stopped by Zatt. (Peterson deposition, 25:7-26:13; Zatt Declaration, ¶¶ 4, 5.)

8. Zatt approached Peterson and informed him he was under arrest. (Peterson deposition; 29:14-30:18, 31:18-25; Zatt Declaration, ¶¶ 4,5.)

9. Peterson extended his right arm as instructed and Zatt took the arm. Peterson claims that Zatt raised the right arm approximately "a couple" of inches above the lower part of the center of his back. Peterson was then handcuffed. (Peterson deposition, 29:14-30:18, 31, 18-25, 32:1-7, 33:5-19; Zatt Declaration, ¶ 5.)

10. Zatt did not twist Peterson's arm, wrist, shoulder, strike Peterson or otherwise use any pain compliance techniques. (Peterson deposition, 32:15-21, 34:6-11, Zatt Declaration, ¶ 5.)

11. Peterson carried no identification. (Peterson deposition, 58:21-23; Zatt Declaration, ¶ 5.)

12. Peterson was placed in the back of Zatt's vehicle for approximately 20 minutes before being transported to jail. Before leaving the arrest scene, the cuffs were loosened by Zatt. (Peterson deposition, 58:24-59:7, 62:19-63:2.)

13. After booking, Peterson was at the jail for between 2.5 and 3 hours before release.

2

(Peterson deposition, 67:8-68:15.)

14. Peterson did not claim any injury on the written questionnaire done at the San Luis Obispo County Jail. (Peterson deposition, 67:25-68:8; 70:16-71:22; "Inmate Questionnaire", Exhibit 1 to Declaration of Thomas A. Cregger.)

15. Peterson did not seek any medical help for his claimed shoulder injury until "late" 2009. (Peterson deposition, 36:3-37:23.)

16. Peterson saw a physician only once for his claimed shoulder injury. (*Id.*)

17. Peterson was prescribed physical therapy, but did not go. No medications were prescribed. (Peterson deposition, 97:13-98:6.)

18. No injury has ever been diagnosed. (Peterson deposition, 37:2-23; 97:13-16.)

19. Peterson cannot identify any source of exacerbation of his claimed shoulder pain and has no physical limitations from the same. (Peterson deposition, 48:18-49:4.)

20. Any bruising to Peterson's wrists claimed to be associated with the use of handcuffs resolved within 3 to 4 days. (Peterson deposition, 49:9-23.)

## CONCLUSIONS OF LAW

1. Summary Judgment on an excessive force claim should be granted sparingly because deciding the issues requires a finder of fact to, "sift through disputed factual contentions," and the issues often turn on "credibility determinations." *Espinosa v. City and County of San Francisco*, 598 F.3d 528, 537, 544 (9th Cir. 2010). However, here the facts are not in dispute, and this Court may determine as a matter of law whether ZATT used excessive force in arresting plaintiff.

2. The Fourth Amendment does not preclude the use of reasonable force. Reasonable force is that force which is necessary to secure the safety of the officers during a search or arrest. In analyzing the reasonableness of the force used, the Court balances the nature and quality of the intrusion on the Plaintiff's Fourth Amendment interests with the countervailing governmental interest at stake. *Graham v. Connor*, 490 U.S. 386 (1989).

3. Plaintiff violated California Penal Code § 587b, a misdemeanor, by climbing onto a rail car located on Union Pacific Railroad tracks.

4. Zatt, having witnessed Peterson on the rail car, was, under both federal and California

law, within his rights as a police officer to detain and arrest Peterson.

5. The governmental interest promoted by section 587b is significant, as it protects the safety of not only a person who might climb onto rail equipment, but also the public at large.

6. Plaintiff's lack of identification legitimately raised Zatt's concerns for his own safety. *United States v. Marez*, 19 F.3d 31 (9th Cir. 1994).

7. The detention and arrest of Peterson by Zatt, to include the use of handcuffs, was appropriate, as Zatt had legitimate concerns regarding officer safety, to include that Peterson had no identification in his possession.

8. Any intrusion on Peterson's rights, whether arising under the Fourth Amendment or state law, was minimal. Claims of painful handcuffing without evidence of actual injury represent only a minimal intrusion. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2001). Arrest without the use of pain compliance techniques represents a minimal use of force and a minimal intrusion on a plaintiff's Forth Amendment interests. *Forrester v. City of San Diego*, 25 F.3d 804 (9th Cir. 1994).

9. The amount of force used by Zatt, which did not involve striking Peterson or use of pain compliance techniques, was minimal, reasonable under the circumstances and did not constitute excessive force under a Fourth Amendment analysis.

10. With respect to Peterson's state law claims, Zatt's use of force was reasonable and therefore privileged under California Penal Code §§ 835a, 836 (a)(1), 836.5(b).

Dated: November 18, 2010.

_____
MANUEL L. REAL
UNITED STATES DISTRICT JUDGE